1    WO

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7                  FOR THE DISTRICT OF ARIZONA

8    Harold Randall Hunsaker, Jr.,              No. CV-16-08304-PCT-GMS

9              Plaintiff,                        **ORDER**

10   v.

11   Nancy A. Berryhill,

12              Defendant.

13

14          Pending before the Court is Claimant Harold Randall Hunsaker Jr.'s appeal of the

15   Social Security Administration's (SSA) decision to deny disability benefits and

16   supplemental security income. (Doc. 19). For the following reasons, the Court affirms the

17   ALJ's decision.

18                              **BACKGROUND**

19          On February 20, 2013, Mr. Hunsaker filed a claim for disability insurance benefits

20   under Title II of the Social Security Act, and on February 22, 2013 Mr. Hunsaker filed a

21   Title XVI application for supplemental security income. Mr. Hunsaker alleged that the

22   disability began on October 2, 2012 after he suffered an aneurysm. (Tr. 40). His

23   applications to the SSA alleged disability on the basis of aortic dissection, congestive

24   heart failure, acute kidney injury, hemodialysis, and high blood pressure. (Tr. 126, 258).

25   Mr. Hunsaker also alleges depression and anxiety disorders. His claims were denied on

26   July 11, 2013; reconsideration was denied on December 30, 2013.

27          Mr. Hunsaker requested and received a hearing which was held on March 20,

28   2015. The ALJ found that Mr. Hunsaker was not disabled under the Act. The Appeals

Council denied the request to review, making the Commissioner's decision final. Mr. Hunsaker now seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

### I. Legal Standard

A reviewing federal court will address only the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n. 13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits when that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id*. (quotation omitted). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id*. (quotation omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). When evidence is "subject to more than one rational interpretation, [courts] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981, F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

### II. Analysis

Claimant alleges that the ALJ erred by (1) failing to properly assess Claimant's mental residual functional capacity (RFC); (2) failing to fully develop the record; and (3) improperly rejecting Claimant's credibility.

#### A. Residual Functional Capacity

The ALJ determined that Mr. Hunsaker had severe impairments, but that they did not meet or medically equal a listed impairment. (Tr. 21). When an impairment does not meet or equal a listed impairment, the ALJ must make a finding about the claimant's

residual functional capacity. The RFC is then used at steps four and five of the sequential process to determine whether the claimant can return to past relevant work or adjust to other work in the national economy. 20 C.F.R. § 404.1520(e). A claimant's RFC "is the most [the claimant] can still do despite [the claimant's] limitations." *Id.* at § 404.1545(a)(1). In assessing an RFC, ALJs must consider "all of [the claimant's] medically determinable impairments." *Id.* at § 404.1545(a)(2).

Mr. Hunsaker argues that the ALJ erred by failing to properly account for Mr. Hunsaker's mental limitations in the RFC. The ALJ determined that Mr. Hunsaker had two severe mental impairments: anxiety disorder and depressive disorder. (Tr. 19). The ALJ further determined that Mr. Hunsaker's mental limitations did not meet or medically equal a listed impairment. (Tr. 21–22). To meet the "paragraph B" criteria, a claimant must show that their mental impairment or impairments result in two of the following: "marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation." (Tr. 21). The ALJ found that Mr. Hunsaker had only mild restrictions of daily living and social functioning; in addition, Mr. Hunsaker has no episodes of decompensation. (Tr. 21–22). However, the ALJ did find that Mr. Hunsaker had moderate restrictions of concentration, persistence, and pace. (Tr. 22). The ALJ asserted that "[t]hese restrictions are supported in the residual functional capacity by limiting the claimant to tasks that can be learned by demonstration within 30 days." *Id.* This kind of work is defined by regulations as unskilled work. *See* 20 C.F.R. § 416.968(a).

Unskilled work is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a). SSA regulations require that the "decisionmaker must not assume that failure to meet or equal a listed mental impairment equates with capacity to do at least unskilled work." SSR 85-15. Unskilled work requires the abilities "to understand, carryout, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work

situations; and to deal with changes in a routine work setting." *Id*. In determining Mr. Hunsaker's RFC, the ALJ determined that Mr. Hunsaker "has the residual functional capacity to perform light work . . . that is limited to tasks that can be learned by demonstration within thirty days."

Mr. Hunsaker, in contesting the ALJ's RFC, notes that impairments of concentration, persistence, or pace are not necessarily provided for by limiting a claimant to unskilled work. *See Wendte v. Colvin*, No. CV-12-1523-PHX-GMS (D. Ariz. filed, May 30, 2013). But that does not appear to be a problem in this case. Here, the ALJ found that Mr. Hunsaker had "the ability to sustain focused attention and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in work settings despite his mental impairments." (Tr. 22). He made this determination based on Mr. Hunsaker's statement that he had the ability to understand and follow both verbal and written instructions, though he said that at times he had to reread instructions and could lose focus. The ALJ further noted that "the claimant attained 28 of 30 points in a mini mental status examination (MMSE), and exhibited satisfactory concentration during this test," and that "[a]t examination the claimant denied difficulty with concentration or problem solving." *Id*. The ALJ further noted that "[h]e did not need redirection or questions repeated at the hearing." *Id*. He thus concluded that "[t]hough the evidence is conflicting, taken as a whole it is consistent with a level of concentration, persistence and pace that is no more than moderately restricted. These restrictions are supported in the residual functional capacity by limiting the claimant to tasks that can be learned by demonstration within 30 days." *Id*.

The ALJ's reasoning and placement in an unskilled work category is thus appropriate. Mr. Hunsaker does not allege that the ALJ improperly weighed and credited the report of Dr. Brent Geary, an examining physician.[1] (Doc. 19, pg. 1). Even if he had, however, the ALJ provides sufficient reason to partially accept Dr. Geary's opinion when

---

[1] As for Mr. Hunsaker, the Court determines below that the ALJ did not err in rejecting Mr. Hunsaker's credibility.

he relies on the claimant's statements, hearing testimony, and test results. It was not inappropriate for the ALJ to limit his acceptance of Dr. Geary's statement that Mr. Hunsaker would need occasional redirection when Dr. Geary did not translate that observation into any specific function limitation, *see Morgan v. Comm'r of the Soc. Sec. Admin.,* 169 F.3d 595, 601 (9th Cir. 1999), and it is otherwise unclear on what basis Dr. Geary made the determination. *See, e.g., Topmasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008). Here, the RFC properly provided for Mr. Hunsaker's limitations. There is no evidence in the record that Mr. Hunsaker would not be able to respond appropriately with supervisors or coworkers. Nor is there evidence that he could not deal with changes in a work routine. Therefore, the Court cannot find that the ALJ erred in limiting Mr. Hunsaker to unskilled work and the RFC is supported by substantial evidence. In this case, Mr. Hunsaker's limitations of concentration, persistence, and pace were properly provided for in the RFC.

## B. Developing the Record

ALJs have an "independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quotations omitted). This duty exists for both unrepresented and represented claimants. *Id.* The duty to develop the record is triggered when the ALJ determines that there is ambiguous evidence or that the "record is inadequate to allow for proper evaluation of the evidence." *Id.* The ALJ can discharge this duty by "subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open." *Id.* (citing *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998)).

Mr. Hunsaker alleges that the ALJ failed to fully develop the record. Mr. Hunsaker states that there was no medical opinion sufficient for the ALJ to determine a mental RFC. Here, however, the ALJ never determined that the evidence was ambiguous or that the record was inadequate. The ALJ did order a consultative examination of mental disabilities from Dr. Geary. (Tr. 1325–31). Mr. Hunsaker cites no case that requires the

ALJ to have an opinion from a treating physician. Mr. Hunsaker's extensive medical records from his mental health physicians are in the record for the ALJ to review and consider. (Tr. 1452–1525). The ALJ satisfied her duty to develop the record.

## C. Rejecting Claimant's Credibility

When a claimant alleges subjective symptoms, the ALJ must follow a two-step analysis to decide whether to credit the claimant's testimony. First, the claimant "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)) (quotation marks omitted). The claimant does not need to show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282. Mr. Hunsaker was found to suffer from the severe impairments of obesity, atrial fibrillation, chronic kidney disease, status post dissection of the thoracic aorta, anxiety disorder, and depressive disorder. (Tr. 19). These impairments could reasonably be expected to produce the mental and physical limitations that Mr. Hunsaker alleges are disabling. Mr. Hunsaker, therefore, satisfied the first step of the analysis.

If the claimant can make the showing required in the first step and the ALJ does not find any evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id*. at 1281. The Court "may not affirm [the ALJ's decision] simply by isolating a specific quantum of supporting evidence." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In this case, the ALJ clearly and specifically gave reasons for rejecting Mr. Hunsaker's testimony about the severity of his symptoms. *See* SSR 96-7p (stating that, in addition to objective medical evidence, ALJs must consider factors such as an individual's daily living activities, the medication and treatment for the pain, and the frequency and duration of the pain). The ALJ cited medical evidence from

Mr. Hunsaker's cardiologist and recent physical examinations that was in conflict with Mr. Hunsaker's alleged limitations. (Tr. 24). Next, the ALJ determined that Mr. Hunsaker's level of activity did not support the alleged limitations (e.g. using the treadmill for twenty minutes at a time, swims, goes to the gym, does yardwork). *Id. See Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the ALJ was permitted to consider the claimant's daily living activities of cooking, cleaning, shopping, interacting with family, and managing finances); *Morgan*, 169 F.3d at 600 ("If a clamant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting [here, fixing meals, doing laundry and yard work, and caring for a friend's child], a specific finding as to this fact may be sufficient to discredit a claimant's allegations."). The ALJ additionally found that Mr. Hunsaker's treatment was both conservative and that Mr. Hunsaker had not consistently followed his treatment plan. *Id. See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (holding that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"). Finally, the ALJ noted that Mr. Hunsaker has endorsed the view that he is able to work, at least part time. *Id. See, e.g.*, *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988) (upholding an ALJ's adverse credibility determination, where the ALJ considered the fact that the claimant "received unemployment insurance benefits thereafter[,] apparently considering himself capable of work and holding himself out as available for work[ ]"); *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Continued receipt of unemployment benefits does case doubt on a claim of disability, as it shows that an applicant holds himself out as capable of working."). Mr. Hunsaker made these claims both to a therapist and during his hearing in front of the ALJ. All of these are reasons that provide clear and convincing evidence upon which an ALJ might discount the credibility of Mr. Hunsaker.

If the "evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) (citing *Tackett v. Apfel*,

180 F.3d 1094, 1098 (9th Cir. 1999)). There is substantial evidence in the record to support the ALJ's reasons for discounting Mr. Hunsaker's credibility.

### CONCLUSION

The ALJ did not err in fashioning the claimant's RFC, was not obliged to develop the record further, and did not err in rejecting the claimant's credibility. The ALJ's decision is upheld.

**IT IS THEREFORE ORDERED** that the ALJ's decision to deny disability benefits and supplemental security income is affirmed. The Clerk of Court is directed to enter judgment accordingly.

Dated this 22nd day of February, 2018.


_____
Honorable G. Murray Snow
United States District Judge